IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROLINE BEHREND, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COMCAST CORPORATION, et al. | : | NO. 03-6604 |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

| | | |
|---|---|---|
| JACK ROGERS, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COMCAST CORPORATION, et al. | : | NO. 07-218 |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

| | | |
|---|---|---|
| MARTHA KRISTIAN, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COMCAST CORPORATION, et al. | : | NO. 07-219 |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**MEMORANDUM**

**Padova, J.**                                                    **July 31, 2007**

I.      **INTRODUCTION**

These consolidated class actions involve antitrust claims under Sections 1 and 2 of the

Sherman Act, 15 U.S.C. § 1, 2, arising from the activities of the defendants (collectively "Comcast")

in the Philadelphia, Chicago and Boston geographic markets.   In prior decisions, the Court has

denied motions by Comcast to dismiss the Philadelphia / Chicago Complaint.  We have also granted

class certification for the proposed Philadelphia Class.[1]  Presently before the Court is a motion for

judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c) in the Philadelphia and Chicago case,

based on the antitrust pleading standard recently announced by the United States Supreme Court in

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007).  Also before the Court is a motion to

dismiss the Boston Consolidated Amended Class Action Complaint ("CACAC"), pursuant to Fed.

R. Civ. P. 12(b)(6).  That motion raises nearly identical issues already decided by the Court in

adjudicating the motion to dismiss the Philadelphia / Chicago Complaint.[2]  Having considered the

parties' arguments regarding Twombly, we conclude that the Boston CACAC, as well as the

Philadelphia / Chicago Complaint, satisfy the new pleading standard.  Accordingly, we deny the

pending motions.[3]

## II.    BACKGROUND

In the first of our two prior Memoranda, we determined – applying the now superceded

pleading standard of Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (holding that a claim may be

dismissed under Rule 12(b)(6) only if it appears beyond doubt that the plaintiff could prove no set

of facts in support of the claim that would entitle him to relief) – that the Class had antitrust

standing; had stated a *per se* claim for violation of § 1 of the Sherman Act for allegedly engaging in

---

[1]A motion to certify a Chicago class has been filed but is not yet ripe for adjudication. Motion practice to certify the Boston class has not yet commenced.

[2]To the extent that the Boston motion raises issues already adjudicated in our prior Memoranda, we incorporate those discussions by reference.  Specifically, we deny Comcast's arguments relating to the Plaintiffs' antitrust standing, Sherman Act § 1 *per se* and rule of reason theories, and § 2 monopolization and attempted monopolization claims for the reasons stated in our prior Memoranda, as supplemented by our discussion here of the Twombly pleading standard.

[3]Because we find the Philadelphia / Chicago complaint satisfies the Twombly pleading standard, we deny as moot the motion of Comcast to stay discovery in the case.

the horizontal division of cable markets by entering into swap agreements with its competitors (Count One); and had stated claims under § 2 of the Sherman Act for monopolization (Count Two) and attempted monopolization (Count 3).  We rejected Comcast's arguments on those Counts that the Class lacked antitrust standing and had failed to properly define the relevant geographic market. Glaberson v. Comcast Corp., No. Civ. A. 03-6604, 2006 WL 2559479, (E.D. Pa. Aug. 31, 2006).

In the second Memorandum, addressing Comcast's motion for partial reconsideration, we again determined that the Class had antitrust standing, stating that "accepting these allegations [that the various parties to the swap transactions were competitors] as true does not constitute clear error, given this early stage of the proceedings."  Glaberson v. Comcast, No. Civ. A. 03-6604, 2006 WL 3762028, *5 (E.D. Pa. Dec. 19, 2006).  We went on to find that our determination, that the *per se* rule applied to the swap agreements because they allegedly constituted horizontal market allocations, was not error.  We did grant reconsideration regarding Count One on the issue of how the rule of reason applied, because we did not consider the issue in the first Memorandum.  We recognized in the second Memorandum that Count One asserted violations of § 1 of the Sherman Act based on a *per se* theory as well as a rule of reason theory.  We concluded that the rule of reason theory was sufficiently pled – again under the old pleading standard – because the Class asserted that before Comcast's merger with AT&T Broadband, the two were competitors in the geographic markets and product market, that the swap agreements restrained trade, that as a result of the agreements actual and potential competitors were removed from the Philadelphia and Chicago clusters, and that the agreements affected competition.  Id.

## III.   BELL ATLANTIC CORP. V. TWOMBLY

In Twombly, the Supreme Court "retired" the "no set of facts" pleading standard of Conley

v. Gibson, 355 U.S. 41 (1975), holding that "[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard:  once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Twombly, 127 S.Ct. at 1969.  The Court described a "plausibility" standard for considering whether a contract, conspiracy or combination in restraint of trade has been adequately pled under § 1 of the Sherman Act:

> we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.  Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.  And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely."

Id. at 1965 (quoting  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (footnote omitted).  Stated succinctly, the holding of Twombly is that, while an antitrust complaint need not plead detailed factual allegations, the factual allegations it does include "must be enough to raise a right to relief above the speculative level."  Id. at 1964-65.  Though the Twombly plaintiffs' complaint included factual details of the defendants' independent non-competitive conduct, it failed to allege any facts compelling the inference that this conduct arose from an agreement among the defendants not to compete.  Id. at 1965.  The Court ultimately affirmed the district court's dismissal of the complaint, holding that plaintiffs had "not nudged their claims across the line from conceivable to plausible." Id. at 1974.

## V.    THE PARTIES' ARGUMENTS

Comcast argues in its motion for judgment on the pleadings in the Philadelphia / Chicago case, and in its supplemental brief in the Boston cases, that Twombly raised the bar for survival of

complaints and lowered the bar for granting motions to dismiss. It argues that the Class Complaint is predicated entirely on the theory that the swap transactions eliminated actual and potential competition because potential overbuilders were eliminated, but does not set forth any facts to support its conclusory allegation that the parties that entered into the swap agreements actually engaged in competition or were ever likely to do so as overbuilders in their neighbors' exclusive franchises. Rather, the Complaint merely asserts that incumbent cable companies *would have* competed against each other, but for the challenged transactions. Comcast contends that the Supreme Court intended that allegations of merely potential competition were insufficient because it was completely plausible (and, according to Comcast, more likely) that an incumbent firm with a historical, legal monopoly would elect not to overbuild an adjacent monopolist, thereby avoiding the expense and uncertainty associated with such a strategy. (Mem. 2-3.) Like in Twombly, where the plaintiffs offered no facts suggesting that the defendants' business decision raised an inference of conspiracy, Comcast argues that the Class has failed to plead any facts suggesting that Comcast and an acquired company ever competed or would have competed against each other, but for the swap transactions. (Id. at 3.)

The Class responds that the holding of Twombly is inapplicable to its Complaint because it is not alleging a § 1 claim based on parallel conduct. Rather, the Complaint pleads a *per se* § 1 antitrust violation based on horizontal allocation of markets achieved *through actual agreements* – the swap transactions – and not on amorphous parallel conduct that could have multiple, plausible implications. The Complaint also alleges claims under § 2 of the Sherman Act, for unlawful monopolization and attempted monopolization, that have no connection with the parallel conduct discussed in Twombly.

According to the Class, <u>Twombly</u> did not change the pleading requirement for § 1 cases, or antitrust claims generally, so as to impose a heightened pleading standard.  (Mem. at 4 (quoting <u>Twombly</u> at 1974 ("Here, in contrast, we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."))); <u>see also</u> <u>Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163, 168-69 (1993) (holding that courts may not apply a heightened pleading standard in civil rights cases since it conflicts with the liberal system of notice pleading set up by the Federal Rules of Civil Procedure).  The Class asserts that the pleading rule in federal court remains Fed. R. Civ. P. 8(a)(2), that a plaintiff is required to give "'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Twombly</u>, 127 S.Ct. at 1964 (citing <u>Conley</u>, 355 U.S. at 47).  The Class emphasizes that the Court explicitly disclaimed that it was "requir[ing] heightened fact pleading of specifics," <u>Twombly</u> at 1974, and emphasized the continued viability of <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506 (2002), <u>see id.</u> at 1973-74, which had rejected a heightened pleading standard.  <u>See also</u> <u>Erickson v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007) (citing <u>Twombly</u>'s citation of <u>Swierkiewicz</u> ).

To the extent that the new plausibility standard is applicable to its complaints, the Class argues that the Philadelphia / Chicago Complaint and the Boston CACAC far exceed this baseline. It asserts that its *per se* horizontal allocation claim is a classic example of a *per se* violation of § 1 – an agreement among competitors at the same level of the market structure to allocate territories in order to minimize competition.  (Mem. at 11-12 (citing <u>United States v. Topco Assocs., Inc.</u>, 405 U.S. 596, 608 (1972)).  It points to the following factual averments in the Philadelphia / Chicago complaint that sustain the plausibility of its § 1 claim:

- Before the transactions, the Philadelphia market contained numerous competitors. (Compl. ¶¶ 52-56.)

- The parties to the swap transactions were in actual or potential competition with each other. (Id. ¶ 11.)

- The swap transactions physically removed actual and potential competitors from the Philadelphia and Chicago clusters, making the competitors' return to those areas financially unattractive and further raising barriers to entry for other competitors. (Id. ¶ 54.)

- The swap transactions removed a check on Comcast's ability to raise prices. (Id. ¶ 75.)

- Potential competitors have not entered or reentered the Philadelphia and Chicago markets. (Id. ¶ 63.)

- The swap transactions further suppressed competition by increasing already high barriers to entry by actual or potential competitors, including overbuilders. (Id. ¶ 62, 99.)

(Mem. at 5-6.) In addition, Philadelphia / Chicago Complaint avers generally that:

- Comcast entered into the swap agreements to avoid competition by allocating the nation's regional cable markets amongst itself and its largest competitors through the swaps of their respective cable assets, including subscribers. (Id. ¶ 4.)

- Comcast received competitors' cable systems and cable subscribers in the Philadelphia and Chicago cable markets in exchange for Comcast's cable systems and cable subscribers in other parts of the country. (Id. ¶¶ 4, 10, 50, 54-56.)

- Comcast swapped its Chicago-area subscribers for AT&T Broadband's Philadelphia-area subscribers. (Id. ¶¶ 4, 56.) Then, as part of the November 18, 2002, merger between Comcast and AT&T, Comcast acquired AT&T Broadband's cable monopoly and cable

subscribers in the Chicago area. (Id.  ¶¶ 5, 57.)  The result of all the swap agreements was that Comcast willfully obtained and maintained monopoly power in the Philadelphia and Chicago geographic markets (Id. ¶¶ 6, 31.)

- Comcast currently controls ninety-four percent and ninety-two percent of the cable market in the Philadelphia and Chicago clusters, respectively, and Comcast has used its monopoly power to raise cable prices in the Philadelphia and Chicago clusters to artificially high, supra-competitive levels. (Id. ¶¶ 7, 80-81, 99.)

The allegations of the Boston CACAC parallel the Philadelphia / Chicago Complaint, substituting factual allegations specific to AT&T Broadband's history of acquisitions in Boston for those of the other clusters.  (CACAC ¶¶ 51-56.)[4]  The CACAC raises the same *per se* and rule of reason theories under § 1 of the Sherman Act for horizontal market division, and the same claims under § 2 of the Sherman Act for monopolization and attempted monopolization.  (Id. ¶¶ 68-107.)[5] The CACAC recounts the history of AT&T Broadbands's swap agreements with Charter

---

[4]Plaintiffs also substitute allegations regarding New England Cable News ("NECN") in the CACAC for the allegations regarding Comcast Sportsnet in the Philadelphia / Chicago complaint. They assert that Comcast is the joint owner of NECN, which provides news, weather, business and sports coverage in New England.  They assert that Comcast's control of NECN, and its denial of access to the programming to unaffiliated cable systems directly competing with Comcast, offers it a significant competitive advantage in the relevant geographic market.  (CACAC ¶¶ 84-85.)

In addition, Plaintiffs make allegations regarding alleged anticompetitive conduct, including targeted marketing campaigns, price discounts, and non-uniform pricing, regarding Comcast's attempt to capture subscribers from BELD, a rival system in Braintree, Massachusetts, as well as RCN, a cable overbuilder.  (Id. ¶¶ 86-92.)

[5]The Boston CACAC also asserts claims under §§ 4 and 5 of the Massachusetts Antitrust Act,  Mass. Gen. L. ch. 93, §§ 4, 5, whose provisions parallel those of §§ 1 and 2 of the Sherman Act.  By its terms, the Act "shall be construed in harmony with judicial interpretations of comparable federal antitrust statutes insofar as practicable."  Mass .Gen .L. ch. 93, § 1.  We note that the Boston Plaintiffs mistakenly labeled their attempted monopolization claim "Count IV."  There is no "Count III."

Communications, Cablevision Systems Corp. and MediaOne in the Boston cluster prior to AT&T Broadbands's merger with Comcast.  (Id. ¶¶ 55-56.)  Plaintiffs allege that, through the merger, Comcast became liable for AT&T Broadband's antitrust liability arising from the creation of the Boston cluster.  (Id. ¶ 58.)  They assert that the swap transactions in Boston eliminated actual and potential competitors, constituting an unreasonable restraint on competition for cable television services in the Boston cluster.  (Id. ¶¶ 60-61.)  As in the Philadelphia / Chicago Complaint, the Boston Plaintiffs assert that the elimination of competition created a horizontal division of the market, suppressed competition, suppressed entry into the market by overbuilders and from former competitors that ceased or reduced their cable operations, and allowed Comcast to increase prices to supra-competitive levels.  (Id. ¶¶ 62.)

## VI.    DISCUSSION

In our first Memorandum, we held that the averments of the Philadelphia / Chicago Complaint's § 1 claim were sufficient to state a claim, reasoning that the allegations that swap agreements "constitute horizontal market allocations are buttressed by descriptions in the [Philadelphia / Chicago Complaint] of the parties to the swap agreements, when the agreements were completed, and how the terms of the agreements served to eliminate competitors from the Philadelphia and Chicago clusters and effectively preclude opportunities for entry and reentry." Glaberson, 2006 WL 2559479, at *9.  We also found that Count One further alleged that the swap agreements were the result of concerted action and a proximate cause of Plaintiffs' injuries.  Id. at *10.  We find that the holding of Twombly does not change these results.

While we do not agree with the Class' argument that Twombly does not apply to the Philadelphia / Chicago Complaint and the Boston CACAC because they are alleging § 1 claims

based on horizontal market division rather than ones based on parallel conduct, we do agree that the decision – by its own terms – did not impose a heightened pleading standard.  The plausibility standard requires that an antitrust plaintiff plead "enough factual matter (taken as true) to suggest that an agreement was made," "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement," and "facts that are suggestive enough to render a § 1 conspiracy plausible." Twombly at 1965.  This standard, the Court specified, did not alter the "short and plain statement" requirement specified in Rule 8(a)(2).  Id. at 1973 n. 14 ("In reaching this conclusion, we do not apply any 'heightened' pleading standard. . . .").  Twombly only requires that the short and plain statement have "enough heft" to show entitlement to relief.  Id. at 1965.  The Court also noted that the line "between the factually neutral and the factually suggestive . . . must be crossed to enter the realm of plausible liability," id. at 1966 n. 5, and that a complaint warranted dismissal only where it failed "*in toto* to render plaintiffs' entitlement to relief plausible."  Id. at 1973 n. 14.  In applying this standard, an antitrust complaint would certainly meet the Twombly criteria if the complaint constitutes notice to the defendant of the legal claims asserted and includes a statement of the elements of those claims, along with allegations of the defendant's underlying conduct that, if proven, would plausibly demonstrate such elements.  The allegations of the Philadelphia / Chicago complaint and the Boston CACAC meet this standard.

The principal problem the Supreme Court seems to have found with the complaint in Twombly is that, while it alleged independent non-competitive conduct, it failed to allege any facts compelling the inference that this conduct arose from an agreement among the defendants not to compete.  Unlike the complaint in Twombly, the Philadelphia / Chicago Complaint and the Boston CACAC allege facts sufficient to show an "agreement" was made to impose horizontal market

divisions.   First, we have clear allegations of actual agreements between Comcast and its competitors.  Second, the allegations of Comcast's anticompetitive conduct are sufficient to support the characterizations of those agreements as horizontal market divisions.  The Philadelphia / Chicago Complaint and the Boston CACAC provide factual descriptions of the parties, their roles as competitors in the geographic markets, when the agreements were completed, and how the terms thereof allegedly eliminated competitors in, and raised entry and reentry barriers to, the Philadelphia, Chicago and Boston clusters.   These allegations are sufficient to show a plausible contract, combination or conspiracy in restraint of trade because the alleged result of those agreements – a horizontal division of markets – is a plausible inference from Comcast's conduct in entering into them.  The Class asserts facts tending to show plausibly illegal conduct through its allegations that, following the acquisition of the small competing systems by both Comcast and AT&T Broadband, Comcast agreed to swap its Chicago-area subscribers for AT&T Broadband's Philadelphia-area subscribers, removing AT&T Broadband from the Philadelphia market and Comcast from the Chicago market.  This allegation of an "agreed upon division of markets between competitors in order to suppress competition," makes the Class' entitlement to relief under § 1 of the Sherman Act (and § 4 of the Massachusetts Antitrust Act in the Boston CACAC) clearly plausible.  See Palmer v. BRG of Georgia, Inc., 498 U.S. 46, 49 (1990) ("'One of the classic examples of a *per se* violation of § 1 is an agreement between competitors at the same level of the market structure to allocate territories in order to minimize competition. . . .  This Court has reiterated time and time again that [h]orizontal territorial limitations . . . are naked restraints of trade with no purpose except stifling competition.'" (quoting Topco Assocs., Inc., 405 U.S. 596, 608 (1972))); cf The American Channel, LLC v. Time Warner Cable, Inc., No. Civ. A. 06-2175, 2007 WL 18992227 (D. Minn. June 28,

2007) (finding Sherman Act § 1 allegations of a refusal to deal theory, even if true, showed only

parallel conduct and not an agreement or conspiracy between Time Warner and Comcast).[6]  This

--------

[6]In a letter brief submitted July 9, 2007, Comcast submitted the decision in The American Channel for our consideration in the pending motions.  We find that the decision, holding that the plaintiff lacked antitrust standing and failed to adequately allege the geographic market, is inapposite.

The case involved Sherman Act § 1 claims brought by an independent cable channel that unsuccessfully sought to be carried by the Adelphia cable system, as well as by Time Warner and Comcast.  The First Amended Complaint, filed after the court dismissed the original for failure to state claims under the pre-Twombly standard, alleged the defendants simultaneously engaged in persistent and extensive discrimination against independent programming networks in favor of their own affiliates.  The American Channel, 2007 WL 18992227, at *2.  Applying Twombly, the court determined that the refusal to deal allegations, even if true, showed only parallel conduct and not an agreement or conspiracy between Time Warner and Comcast because it did not exclude the possibility of independent action.

The court also determined that the plaintiff's horizontal market division claim, the allegations of which are similar to the allegations *sub judice*, failed to allege any cognizable antitrust injury because the plaintiff had already been denied carriage by each defendant prior to their acquisition of Adelphia's assets.  "As a result, the subsequent division of markets could not have caused direct injury to [the plaintiff] because that purported injury already existed at the time of the Adelphia transaction. [The plaintiff's] assertion that, 'on information and belief,' Adelphia's refusal to carry [its programming] was a result of Defendants' instruction is not sufficient to suggest that some kind of agreement or conspiracy was made."  Id. at *5.  The court also dismissed the plaintiff's § 2 monopolization claim, which was based on the same allegations, finding that the plaintiff failed to adequately allege the relevant geographic market.  Id. at *6.

The court also determined – in what we regard as *dicta* given its determination regarding the geographic market definition – that because the plaintiff conceded that Comcast and Time Warner never competed in the same geographic markets, it was "unclear to the Court how a horizontal division can occur in a geographic market where the two companies do not compete."  Id. at *7.  Focusing on this *dicta*, Comcast argues we should apply Twombly's plausibility standard to dismiss the § 2 claim because Comcast and the other parties to the swap transactions never directly competed in each other's franchise areas.  We cannot agree.  There are numerous § 2 monopolization cases based on horizontal market divisions where the conspirators did not compete in the same geographic market prior to agreeing to allocate the geographic market between themselves.  See e.g., Palmer, 498 U.S. at 49 (holding that it was error to assume that an allocation of markets by competitors "is not unlawful unless the market in which the two previously competed is divided among them" and noting that the conspirators in Topco "had never competed in the same market, but had simply agreed to allocate markets.").  We have held that the Class's elimination of potential competition theory, as well as its factual assertions regarding RCN, are sufficient to state claims under § 2 for monopolization and attempted monopolization.  The holding in The American Channel does not give us cause to reconsider those rulings.

conduct, along with Comcast's later acquisition of AT&T Broadband itself, also makes plausible the claims alleging violation of § 2 of the Sherman Act (and § 5 of the Massachusetts Act in the Boston CACAC), that Comcast monopolized and attempted to monopolize the Philadelphia, Chicago and Boston markets.[7]

Accordingly, we find that the Boston CACAC states claims upon which relief may be granted, and reiterate our prior conclusions that the Philadelphia / Chicago Complaint also states claims upon which relief may be granted.  An appropriate order follows.

---

[7]In adjudicating the motion to certify the Philadelphia Class, we stated:

> As we read Comcast's potential competition argument, it relates only to the attempted monopolization claim, and only to that portion of the attempted monopolization claim that alleges anticompetitive conduct in the cable transactions (and not with regard to Comcast's conduct vis-a-vis RCN).  The argument has no bearing on whether Plaintiffs have shown predominance of common issues on the per se claim, the rule of reason claim, the monopolization claim, or the attempted monopolization claim vis-a-vis RCN.

Behrend v. Comcast Corp., No. Civ. A. 03-6604, 2007 WL 1300725, at *13 (E.D. Pa. May 2, 2007). While Comcast contends here that Twombly mandates that allegations of merely potential competition are insufficient to state an antitrust claim because the mere potentiality of competition may give rise to non-plausible inferences, we find no cause to conclude that the Supreme Court in deciding Twombly – a case addressing a Sherman Act § 1 liability theory – intended to alter its decisions in United States v. Falstaff Brewing Corp., 410 U.S. 526  (1973) and United States v. Marine Bancorporation, 418 U.S. 602 (1974), recognizing potential competition as a viable theory of liability under § 2 of the Sherman Act.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROLINE BEHREND, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COMCAST CORPORATION, et al. | : | NO. 03-6604 |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

| | | |
|---|---|---|
| JACK ROGERS, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COMCAST CORPORATION, et al. | : | NO. 07-218 |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

| | | |
|---|---|---|
| MARTHA KRISTIAN, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COMCAST CORPORATION, et al. | : | NO. 07-219 |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**ORDER**

**AND NOW**, this 31st day of July 2007, upon consideration of the following motions,

and all responses thereto, **IT IS HEREBY ORDERED** as follows:

1.      Defendants' Motion for Judgment on the Pleadings in Civ. A. 03-6604 (Docket Entry 206)

is **DENIED**.

2.      Defendants' Motion to Stay Discovery in Civ. A. 03-6604 (Docket Entry 207) is **DENIED**

**AS MOOT**.

3.      Defendants' Motion for Leave to File Reply Memorandum in Civ. A. 03-6604 (Docket Entry

214) is **GRANTED**.

4.       Defendants' Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint

(filed prior to the transfer of Civ. A. 07-218 and 07-219 to this Court) is **DENIED**.

5.       Defendants' Supplemental Motion to Dismiss Plaintiffs' Consolidated Amended Class

Action Complaint in Civ. A. 07-218 (Docket Entry 6) is **DENIED**.

BY THE COURT:


_____

John R. Padova, J.